IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA ISABEL DELGADILLO, | ) |
| Plaintiff, | ) No. 05 C 3448 |
| vs. | ) Magistrate Judge |
| | ) Arlander Keys |
| OFFICER ROLAND H. PAULNITSKY, OFFICER STEPHEN FRANKO, AND THE CITY OF CHICAGO, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Plaintiff's Motion for Partial Summary Judgment, and Defendants' Motion for Summary Judgment. For the reasons set forth below, Plaintiff's Motion is Denied, and Defendants' Motion is Granted.

**Background Facts**

Plaintiff ran a licensed day care facility in the basement of her home in Chicago, Illinois. On June 13, 2003, Plaintiff cared for six children, including an almost sixteen-month-old toddler named Jorge. Jorge's parents dropped him off with Plaintiff at approximately 6:00 am. According to his parents, Jorge was alert and particularly playful that morning. After arriving at daycare, Jorge rested in a crib, sat up, and played with blocks. Plaintiff admitted that there was nothing out of the ordinary about Jorge's demeanor that morning. Plaintiff was the only adult in her home that day, with the brief exception of her sister, who arrived at approximately 10:00 a.m.

and left shortly after the children finished their lunches at 11:00 am.

At approximately 11:30 am, the children in her charge informed Plaintiff, who was in the kitchen, that Jorge had fallen and was vomiting. In fact, Jorge was having a seizure, and he was convulsing and thrashing on the floor. Plaintiff cleared the vomit from Jorge's mouth, began resuscitation, and called 911. Jorge was taken to Mt. Sinai Hospital, and then transferred to Children's Memorial Hospital ("Childrens").

Jorge arrived at Childrens at 1:40 pm, and was treated by Dr. Daniel Leonhardt. Dr. Leonhardt determined that Jorge had sustained severe head and eye injuries, which likely were the result of violent shaking or shaking with impact. In addition, Jorge had a fractured arm; Dr. Leonhardt opined that Jorge's arm had been fractured at or about the time of his other injuries.

A CAT scan revealed that Jorge's head injury was very fresh and new; surgery confirmed that the injury had happened very recently. Dr. Leonhardt concluded that Jorge must have sustained the injuries at daycare. Dr. Leonhardt explained that Jorge's injuries were so severe that, if Jorge had been injured prior to arriving at Plaintiff's home, it would have been impossible for Plaintiff and Jorge's parents not to have notice Jorge's pain.

The Chicago Police Department was notified of Jorge's injuries, and Detective Roland Paulnitsky was assigned to

investigate. Detective Paulnitsky spoke with Dr. Leonhardt, who informed him that Jorge's injuries were consistent with shaken baby syndrome, and that the injuries must have occurred while Jorge was at Plaintiff's home. With the assistance of a Spanish interpreter, Detective Paulnitsky spoke to Jorge's parents, who told Detective Paulnitsky that Jorge was in good health when they dropped him off at Plaintiff's daycare.

Detective Paulnitsky, along with other Chicago Police Officers, proceeded to Plaintiff's home. Plaintiff admitted to the officers that she was the only adult present just before Jorge began convulsing. Detective Paulnitsky then arrested Plaintiff, and she was transported to Area 1 police headquarters.

Plaintiff was charged and prosecuted for abusing Jorge. *People of the State of Illinois v. Maria Delgadillo,* 03 CR 14099. On November 1, 2004, after hearing testimony from the arresting officers, Judge Stuart Palmer ruled that the police officers did not have probable cause to arrest Plaintiff and ordered that her statements to the police be suppressed. *Transcript of hearing, People of the State of Illinois v. Maria Delgadillo*, 03 CR 14099, at p. 10 (Nov. 1, 2004). Plaintiff was tried and found not guilty.

The Illinois Department of Children and Family Services ("DCFS") also investigated Jorge's injuries, and ultimately concluded that "the evidence supported an indicated report of

child abuse allegation of harm #02 Head Injury and #10 Substantial Risk of Physical Injury" against Plaintiff. *In Re Maria Isabel Delgadillo,* 2004-E-00202, DCFS AHU No. 52-4984, at page 1. Plaintiff appealed the ruling, but Administrative Law Judge Baechle denied Plaintiff's request for appeal and expungement, concluding that Jorge's injuries could have only been caused by Plaintiff.

Plaintiff subsequently filed an eight-count Complaint against Officer Paulnitsky, Officer Franko, and the City of Chicago, alleging: 1) false arrest pursuant to 42 U.S.C. § 1983; 2) false imprisonment pursuant to 42 U.S.C. § 1983; 3) a claim of conspiracy pursuant to 42 U.S.C. § 1983; 4) state law false arrest and imprisonment; 5) state law intentional infliction of emotional distress; 6) state law conspiracy; 7) a claim of respondeat superior against the City; and 8) a claim for indemnification against the City pursuant to 745 ILCS 10/9-102 (West 2007).

Plaintiff has moved for partial summary judgment, arguing that Defendants are collaterally estopped from challenging the state court's ruling in the criminal proceeding that the officers did not have probable cause to arrest her. Defendants have also moved for summary judgment, arguing that Plaintiff's state law claims are time barred; that Plaintiff is collaterally estopped from challenging DCFS's determination that she abused Jorge; that

4

the officers had probable cause to arrest Plaintiff; and that they are entitled to qualified immunity from Plaintiff's suit.

## Summary Judgment Standards

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive summary judgment, the non-moving party must offer more than "mere conclusory" allegations. *Nowak v. St. Rita High School,* 142 F.3d 999, 1002 (7th Cir. 1998). *See also Matsushita Elec. Indus., Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (the non-moving party must offer more than a "metaphysical doubt as to the material facts"). The non-moving party will lose on summary judgment if he cannot present sufficient evidence to support each element of his case for which he will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. And the Court will disregard all facts not properly supported by the record. *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir. 1997).

Under Local Rule 56.1(b), a party opposing a motion for summary judgment shall file a concise response to the movant's statement, which should include "a response to each numbered paragraph in the moving party's statement," including "specific references to the affidavits, parts of the record, and other supporting materials relied upon." (L. R. 56.1(b)(3)(A)). Failure to comply with the Local Rule may result in the paragraphs with inadequate responses being deemed admitted. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 689 (7th Cir. 2000). The Seventh Circuit has "repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1" *Ammons v. Aramark Unif. Servs. Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (noting that substantial compliance does not constitute strict compliance.)

With these standards in mind, the Court will address each party's Summary Judgment Motion in turn.

### Discussion

### I. Plaintiff's Motion for Partial Summary Judgment

Plaintiff argues that, pursuant to 28 U.S.C. § 1738, judicial proceedings in Illinois state courts are entitled to full faith and credit in this Court. Plaintiff argues that, because the state court has already determined that the Defendant Officers did not have probable cause to arrest her, *People v. Maria Delgadillo*, No. 03 CR 14099-01 (Circuit Court of Cook

County Ill. November 12, 2004), she is entitled to Judgment on Counts I (§1983 False Arrest), II (§ 1983 False Imprisonment), IV (State Law False Arrest and False Imprisonment), and VII (State Law Respondeat Superior against the City of Chicago) of her Complaint.

Defendants counter that Plaintiff cannot satisfy the requirements for collateral estoppel, because the Defendant Officers were not parties to Plaintiff's criminal case. The Court agrees.

Under Illinois law, collateral estoppel applies if Plaintiff can show the following elements: 1) there was a final judgment on the merits in the prior adjudication; 2) the previously decided issue was identical with the one presented in the current suit; and 3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *DuPage Forklift Serv., Inc. v. Material Handling Serv., Inc.*, 195 Ill.2d 71, 77 (2001). Plaintiff argues that Defendants were either parties to, or in privity with a party to, the criminal proceedings against her. Caselaw holds to the contrary.

The Seventh Circuit has ruled that a finding of no probable cause in a state criminal proceeding does not collaterally estop the arresting officers from arguing that they had probable cause to arrest in a subsequent § 1983 proceeding. *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir. 1995). The Seventh

Circuit explained that collateral estoppel could not apply against the arresting officers because it was the state, not the officers, that had prosecuted the plaintiff. *Id.* at 1051. The Court emphasized that the defendant officers had not even testified in the underlying state court proceedings, and stated that the "arresting officers had no tactical control over the presentation of the evidence, " no control over what witnesses were called, and no control over what arguments were made in the criminal proceeding. *Id.*

Plaintiff argues that *Kraushaar* is distinguishable because, unlike the arresting officers in *Kraushaar*, the Defendants Officers in the instant case did testify at her criminal trial. However, as Judge Grady explained in *Perkins v. City of Chicago*, 2005 WL 2483385, at *1. (N.D. Ill. Oct. 6, 2005), the fact that an officer is called as a witness at trial is not sufficient to establish that the officers' and the state's interests were so closely aligned that they represent the same legal interest. *Id.* The *Perkins* court explained that:

> The person to be bound, whether a party or their privy, must have had a full and fair opportunity to litigate the issue, as well as an incentive to vigorously litigate in the former proceeding. *Talarico v. Dunlap*, 177 Ill.2d 185, 226 Ill.Dec. 222, 685 N.E.2d 325, 328 (Ill.1997). In prosecuting King Perkins III in a criminal case, the state did not represent the same legal interest that Officer Strong has in defending this civil § 1983 case. The state's primary objective was to secure a conviction, not to demonstrate that Strong's conduct was constitutionally defensible. Obviously, showing that the search of Perkins's home was lawful was important to the state's case but the state was not directly

8

representing the interests of Officer Strong. Moreover, Strong had no control over the criminal case. Perhaps he was a witness, but he did not make decisions regarding trial strategy and he could not appeal the ruling of the state court. Officer Strong was not in privity with the state in the criminal action.

*Id.*

This analysis is consistent with the United State's Supreme Court's ruling that collateral estoppel cannot be used offensively "i.e.--when a plaintiff seeks to estop a defendant from relitigating an issue which the defendant previously litigated and lost in another action-where the application of the doctrine 'would be unfair to a defendant.'" *Kraushaar*, 45 F.3d 1050 (quoting *Parklane Hosiery Co. V. Shore*, 439 U.S. 322, 331 (1979)). Where the defendants did not have a "full and fair opportunity in the preliminary hearing to litigate the issue of whether they had probable cause to arrest [the federal plaintiff], estoppel should not apply." *Williams v. Kobel*, 789 F.2d 463, 470 (7th Cir. 1986).

In the instant case, even though the Defendant Officers testified, they were in "no position to question the State's Attorney's tactics or strategies or the State's attorney's efforts to 'marshal enough evidence as to the Plaintiff.'" *Id.* Therefore, the Court declines to find that the Defendant Officers are collaterally estopped from defending against Plaintiff's claim that they had no probable cause to arrest her. *Whitley v. Seibel*, 676 F.2d 245, 248 n. 1(7th Cir. 1982) (collateral

9

estoppel cannot "be used as a sword against a party who has not previously had his day in court.")

II. **Defendants' Motion for Summary Judgment**

A. **Plaintiff's State Law Claims are Time-Barred**

Defendants argue that a one-year statute of limitations applies to actions brought against a municipality or its employees. 745 ILCS 10/8-101 (2004). They argue that, because Plaintiff was arrested on June 13, 2003, and did not file suit until two years later, on June 13, 2005, Plaintiff's state law claims are barred by the statute of limitations as untimely.

Plaintiff counters that the Seventh Circuit's decision in *Wallace v. City of Chicago,* 440 F.3d 421, 425 (7th Cir. 2006) *aff'd,* 127 S.Ct. 1091 (2007), holds that the statute of limitations for false arrest and false imprisonment is two years—not one. Defendants explain that Plaintiff's reliance upon *Wallace* is misplaced, because *Wallace* analyzed only when such causes of action accrued, and not the applicable statute of limitations.

The Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act") provides that: "[n]o civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101 (West 2007). *See Beacham*

v. *Annerino*, 92 C 1417, 1993 WL 266540, at *4 (N.D. Ill. June 15, 1993) (dismissing state law false arrest and false imprisonment claims as time barred, because Illinois' Tort Immunity Act places a one-year statute of limitations on any civil action against a local entity or its employees.) Illinois courts have made clear that the Tort Immunity Act's one-year statute of limitations applies even where an employee is sued in his individual capacity. *Sperandeo v. Zavitz*, 365 Ill. App.3d 691, 850 N.E.2d 394 (Ill. App. 2d Dist. 2006) (rejecting plaintiff's claim that two-year personal injury statute of limitations applied, and finding instead that 745 ILCS § 8-101's one year statute of limitations applies to lawsuits against municipalities and their employees, even when the employee is sued in his individual capacity.)

The Illinois Supreme Court has found that claims seeking relief other than damages are excluded from the Tort Immunity Act. *Raintree Homes, Inc. V. Village of Long Grove*, 209 Ill.2d 248, 256, 807 N.E.2d 439 (2004). In *Raintree*, the plaintiffs sought restitution, as well as a declaration that an ordinance was unlawful. The Illinois Supreme Court ruled that the Tort Immunity Act's one-year statute of limitations did not apply, because the plaintiffs did not state a claim for damages. *Raintree Homes*, 209 Ill.2d at 258, 282 Ill. Dec. 815, 807 N.E.2d 439. See also, *Bigelow v. City of Rolling Meadows*, 865 N.E.2d

11

221 (Ill. App. 1 Dist. 2007). This exception does not save the day for Plaintiff, however, as her Complaint expressly seeks damages.

The Court agrees that the Tort Immunity Act applies, and that Plaintiff's state law claims – filed two years after she was arrested[1] --are barred by the applicable one-year statute of limitations. Therefore, the Court grants Defendants' Motion for Summary Judgment on Counts IV, V, VI, VII, and VIII of Plaintiff's Complaint.

## B. Defendants Had Probable Cause To Arrest Plaintiff.

The existence of probable cause is an absolute bar to a Section 1983 claim and a state law claim for false arrest and false imprisonment. *Jones v. Webb,* 45 F.3d 178, 183 (7th Cir.1995); *Meerbrey v. Marshall Field & Co.,* 139 Ill.2d 455, 151 Ill. Dec. 560, 564 N.E.2d 1222, 1231 (1990). A police officer has probable cause to arrest when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Booker v. Ward,* 94 F.3d 1052, 1057 (7th Cir.1996).

---

[1] *Wallace* is relevant for clarifying that Plaintiff's cause of action accrued at the time of her arrest. 440 F.3d at 425.

The Court will not review the Defendant Officers' conduct as a Monday-morning quarterback; the Court evaluates probable cause based upon the facts as they would have appeared to a reasonable police officer in the same circumstances. *See Marshall v. Teske,* 284 F.3d 765 (7th Cir.2002). The Defendant Officers need not produce evidence sufficient to support a conviction to establish probable cause. *See Driebel v. City of Milwaukee,* 298 F.3d 622, 643 (7th Cir. 2002); *McKinney v. George,* 726 F.2d 1183, 1187 (7th Cir.1984) (an arrest does not amount to a constitutional violation merely because a court later determines that the complaint was unfounded). To support a finding of probable cause, the Defendant Officers need to demonstrate only the probability or substantial likelihood that the arrestee committed a crime. *See Smith v. Lamz,* 321 F.3d 680, 685 (7th Cir. 2003).

Under both federal and state law, the police may rely upon information from ordinary citizens to establish probable cause for arrest. *See, People v. Bean,* 84 Ill.2d 64, 48 Ill.Dec. 876, 417 N.E.2d 608, 610 (1981). Finally, the Defendant Officers were not required to investigate a claim of innocence before effecting an arrest. *Kelley v. Myler,* 149 F.3d 641, 646 (7th Cir. 1998).

In this case, the undisputed evidence demonstrates that a call to a child abuse hotline notified the police of Jorge's injuries. In response to that call, Officer Paulnitsky went to Childrens and spoke to the physician that had examined and

treated Jorge. Dr. Leonhardt informed Officer Paulnitsky that Jorge's devastating injuries were the result of child abuse, that the injuries had occurred just hours before Jorge had been admitted to Childrens, and that Jorge must have been injured while at daycare. With the assistance of a translator, Officer Paulnitsky interviewed Jorge's parents and learned that Jorge had been in good health when his mother dropped him off at Plaintiff's daycare that morning.

Officer Paulnitsky then proceeded to Plaintiff's home; before doing so, he radioed for assistance from additional officers. Officer Franko was one of the officers that responded to that call. While in Plaintiff's home, Officer Paulnitsky questioned Plaintiff and Plaintiff informed him that she was the only adult in the home just prior to Jorge's seizure. Officer Paulnitsky then arrested Plaintiff for the aggravated battery of Jorge.

Plaintiff argues that this evidence is insufficient to establish probable cause, because, during the state-court suppression hearing, Judge Stewart Palmer found Officer Paulnitsky's testimony to be incredible[2]. During the suppression

---

[2] Plaintiff also argues that this evidence is insufficient to establish probable cause, because Defendants did not obtain a warrant to search or enter Plaintiff's home before arresting her. While this argument may be relevant to a dispute over the suppression of a statement or confession, it is not relevant to the Defendant Officers' argument that they had probable cause to arrest her.

hearing, there was a dispute as to whether Plaintiff had confessed to the Defendant Officers, whether Officer Franko had executed paperwork documenting that confession, and why Defendants could not produce this paperwork. There was an additional dispute about whether Plaintiff was improperly kept from her attorney while she was being questioned at the police station, and whether Plaintiff claimed that Jorge had fallen from a chair or from a beam[3].

While the Court agrees that there is conflicting evidence regarding these issues, they are simply not pertinent to the issue of probable cause. "The test, an objective one, is whether a reasonable officer would have believed the person committed the crime. 'If so, the arrest is lawful, even if the belief would have been mistaken.' Thus probable cause has been described as a zone within which reasonable mistakes will be excused." *Kelly v. Myler*, 149 F.3d 641, 646 (7th Cir 1998) (citations omitted). *See also, Smith v. Lamz*, 321 F.3d 680, 685 (7th Cir. 2003) ("[W]hen a police officer receives information sufficient to raise a substantial chance of criminal activity from a person whose truthfulness he has no reason to doubt, that information is sufficient to establish probable cause.")

---

[3] At the hearing, Plaintiff produced photographs of her daycare facility that did not show a beam. Officer Paulnitsky argued that the photographs did not represent the daycare facility as he viewed it on the day of the arrest.

15

Dr. Leonhardt told Officer Paulnitsky that Jorge's injuries were serious, that they were the result of child abuse, and that they had occurred while he was at daycare. Plaintiff admitted that she told the Defendant Officers that she was the only adult in the house at the time of Jorge's seizure. Plaintiff has not submitted any evidence calling these facts into question. Therefore, the Court concludes that there is no genuine issue that the Defendant Officers were reasonable in believing that Plaintiff had committed the battery against Jorge. Defendants' Motion for Summary Judgment is GRANTED.

### C. Plaintiff Has Produced Insufficient Evidence of a Conspiracy

To establish a prima facie case of civil conspiracy, Plaintiff must prove two things: 1) "an express or implied agreement among defendants to deprive [her of her] constitutional rights;" and 2) "the actual deprivation of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1998). The agreement to conspire may be express or implied. *Id.* An "[a]greement may be inferred from circumstantial evidence, but only if it is sufficient to permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Green v. Benden*, 281 F.3d 661, 665-66 (7th Cir. 2002).

Defendants argue that Plaintiff's conspiracy claim must fail, because Defendants had probable cause to arrest her, thereby negating her false arrest and false imprisonment claims. Absent an underlying constitutional violation, Defendants argue, Plaintiff is precluded from succeeding on her conspiracy claim. *Indianapolis v. Minority Contractors Ass'n v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999).

Plaintiff tacitly acknowledges as much, but responds that her conspiracy charge is based upon more than her now-rejected false arrest and imprisonment claims. Plaintiff's Conspiracy Count also references other violations, including her claims that Defendants deprived her of her right to be free from malicious prosecution and from the denial of due process, and that Defendants falsified her confession, falsified police reports, and deprived her of her right to access to counsel.

The weakness in Plaintiff's position is twofold. First, Plaintiff has presented scant evidence that the Defendants conspired to commit such violations. Plaintiff's Complaint does not describe the underlying violations as separate counts, but mentions them only in the context of her Conspiracy Count. The only evidence[4] that Plaintiff presents in support of these claims are selections from the state court's ruling with regard to the

---

[4] Notably, with the exception of her claim that she was denied access to her counsel, Plaintiff's Rule 56 Statement of Additional Facts does not even mention these incidents.

suppression of her confession. While the state court's ruling certainly supports the inference that these violations occurred, they do not speak to a conspiracy or meeting of the minds between Officers Franko and Paulnitsky[5]. To say that evidence of a constitutional violation, standing alone, is sufficient to demonstrate the intent to conspire would result in the second element of a § 1983 conspiracy claim swallowing the first element; the Court does not read the caselaw to support such an interpretation.

Next, Plaintiff's conspiracy claim in woefully underdeveloped. Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment devotes just over one paragraph in support of her conspiracy claim, and she has neglected to cite to even a single case or statute supporting her position. Plaintiff's lack of effort is particularly troubling in light of Defendants' argument that at least some of the alleged underlying deprivations cannot form the basis of a § 1983 conspiracy action. See Bullock v. Village of Homewood, 2003 WL 1811237, at *2 (N.D.

---

[5] Actually, the snippets submitted by Plaintiff suggest that the state court suspected that Officer Paulnitsky may have been at fault, without implicating Officer Franko. People v. Maria Delgadillo, No. 03 CR 14099-01 (Circuit Court of Cook County Ill. November 12, 2004) ("And I'm not making any indications at this time as to the credibility of Investigator Franko at all" Id. at p. 7 vs. "And then there was this whole sarcastic interchange about the fact that [Officer Paulnitsky] couldn't say where the beam was because he didn't have the plans to the basement. . . . sarcasm in that regard in my opinion detracts from credibility." Id. at 14.)

Ill. 2003) (quoting *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001) (explaining that the Seventh Circuit interprets *Albright v. Oliver*, 510 U.S. 266 (1994) as eliminating a constitutional claim for malicious prosecution based on due process.) Moreover, Plaintiff has not explained how Defendants' alleged refusal to permit her to speak to her attorney when he initially arrived at police headquarters rises to the level of a constitutional violation, when the state court suppressed the purported statements she made to the Defendants on that basis[6].

These deficiencies doom Plaintiff's Conspiracy Claim. The Court GRANTS Defendants' Motion for Summary Judgment.

## D. Plaintiff's Cannot Establish Liability against the City

Plaintiff has also brought respondeat superior and indemnification claims against the City. *See* 745 ILCS 10/9-102. "These two claims are entirely dependent on the success of plaintiff's claims against [the Defendant Officers]." *Taylor v. City of Chicago*, 2003 WL 22282386, at *7 (N.D. Ill. Sept. 30, 2003). Having determined that the Defendant Officers are

---

[6] Similarly, the state court struck Officer Franko's testimony at the suppression hearing, because he was unable to produce certain paperwork documenting his interview with Plaintiff. *See also Kraushaar v. Flanigan*, 45 F.3d 1040 (7th Cir. 1995)(knowing violations of police rules do not rise to the level of constitutional violations.)

entitled to summary judgment on all of Plaintiff's claims, the Court also grants Defendants summary judgment on these claims against the City as well.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is DENIED and Defendants' Motion for Summary Judgment is GRANTED.

Dated: JUNE 1, 2007          E N T E R:

_____
ARLANDER KEYS
United States Magistrate Judge